**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**WASSERMAN, JURISTA & STOLZ, P.C.**
225 Millburn Avenue - Suite 207
Millburn, New Jersey  07041
Phone: (973) 467-2700
Fax: (973) 467-8126
Counsel to Edwin H. Stier, Esq.,
Chapter 11 Trustee
**DANIEL M. STOLZ**
**DONALD W. CLARKE**

| | |
|---|---|
| In Re:<br><br>**BIRDSALL SERVICES GROUP, INC.**, *et al.*,<br><br>                                    Debtors. | Chapter 11<br><br>Case No. 13-16743<br>(Jointly Administered Case No. 13-16746)<br><br>Hon. Michael B. Kaplan |
| **EDWIN H. STIER, CHAPTER 11 TRUSTEE FOR BIRDSALL SERVICES GROUP, INC.,** *et al.* **and PARTNER ASSESSMENT CORPORATION**<br>                                    Plaintiffs,<br>v.<br><br>**T&M ASSOCIATES and**<br>**MARK WORTHINGTON**<br><br>                                    Defendants. | Adv. Pro. No.: |

---

### VERIFIED ADVERSARY COMPLAINT FOR TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, TURN-OVER OF ESTATE PROPERTY, COSTS, SANCTIONS AND OTHER RELIEF

---

Plaintiffs, Edwin H. Stier, Esq., Chapter 11 Trustee ("Trustee") for the captioned jointly administered bankruptcy estates of Birdsall Services Group, Inc. ("Birdsall") and BSG Engineering, Surveying and Landscaping Architecture, LLC ("BSG", collectively with Birdsall, the "Debtors"), by and through his counsel, Wasserman, Jurista & Stolz, P.C., and Partner Assessment Corporation ("Partner"), by and through its counsel, Giordano, Halleran & Ciesla,

P.C., for their Verified Complaint against defendants T&M Associates ("T&M") and Mark

Worthington ("Worthington") allege and say as follows:

## JURISDICTION

1.        This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C.

§1334(b).

2.        This Adversary Proceeding is a Core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (E) and (O).

3.        This Adversary Proceeding is commenced pursuant to Federal Rule of Bankruptcy

Procedure 7001(7); 11 U.S.C. §§ 362, 542 and 549, and applicable law.

4.        Venue is proper in this District pursuant to 28 U.S.C. §1409(a).

## THE PARTIES

5.        Trustee is the Chapter 11 Trustee for the Debtors' bankruptcy Estates by Order

entered April 16, 2013.

6.        Partner (collectively with the Trustee, "Plaintiffs") is the purchaser of the majority of

Debtors' assets and joins as a plaintiff in this Adversary Proceeding as successor-in-interest in

accordance with the Asset Purchase Agreement (the "APA") dated May 24, 2013, which was

approved by Order entered June 7, 2013.  The Trustee and Partner are also parties to Joint

Representation Agreement (the "JRA"), dated July 15, 2013, concerning the enforcement of their

rights including, without limitation, the claims asserted in this action .[1]

7.        Upon information and belief, defendant T&M is a New Jersey corporation, with a

principal place of business located at Eleven Tindall Road, Middletown, New Jersey 07748.

8.        Upon information and belief, defendant Worthington is an individual with a

principal residence located at 22 Mahoras Drive, Ocean Twp., New Jersey 07712.

---

[1] Application seeking an Order authorizing the JRA is being filed contemporaneously with this Verified Complaint and plaintiffs' application for issuance of an Order to Show Cause with temporary restraints.

## GENERAL BACKGROUND

9.      On March 29, 2013 (the "Petition Date"), the Debtors, New Jersey corporations having a principal place of business of 611 Industrial Way West, Eatontown, New Jersey 07724, filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

10.     The Debtors, which were in business since 1919, provide professional engineering and environmental consulting services for diverse clientele on projects throughout New Jersey, Pennsylvania, New York and Connecticut.  Among other areas of concentration, Debtors provide engineering services in the areas of building systems, energy and sustainability, environmental and geotechnical, marine, public engineering, regulatory compliance, site development, transportation, waste management and water resources.

11.     In addition, the Debtors maintained a division providing health and safety related services for their clients, including regulatory compliance and loss prevention consulting services and the development of written health training policies, programs and customized tools to assist in achieving such compliance.  The Debtors' "Health and Safety Division" also provides similar health and safety training and support services internally for Debtors' own employees.

12.     Upon information and belief, prior to the Petition Date, and with the exception of health and safety services of the type described above, T&M provided substantially the same type of engineering services as the Debtors.  T&M was and is a competitor of the Debtors.

13.     On April 15, 2013, an Order was entered approving a settlement between the State of New Jersey (the "State") and the Debtors resolving the civil forfeiture claims that the State asserted against the Debtors (the "Settlement").   Among other things, the Settlement provided for the appointment of a Chapter 11 Trustee for the Debtors' Estates.  On April 16, 2013, an Order was entered approving the appointment of the Trustee.

14.     Pursuant to the terms of the Settlement, it was contemplated that the Trustee would sell the assets of the Debtors as a "going concern" within 120 days of the effective date of the Settlement.

15.     On June 6, 2013, a Sale Order was entered approving the Asset Purchase Agreement between the Debtors and Partner, which provided for the transfer of the majority of the Debtor's assets (the "Partner Sale Order"). The sale closed on June 21, 2013.

### Worthington's Stockholder Agreement

16.     Defendant Worthington was the Manager of the Debtors' Health and Safety Division during the period commencing in 2008 until his sudden resignation on Friday, April 19, 2013.

17.     Prior to Worthington's resignation, the Debtors' Health and Safety Division consisted of approximately ten (10) members, including eight (8) engineers and two (2) administrative assistants.  The Division was well established and regarded as an industry leader in the New Jersey/New York Metropolitan area. The Division, moreover, was highly profitable for Debtors.

18.     On or about January 3, 2011, Worthington entered into an *Amended and Restated Stockholders Agreement* with Birdsall. The Agreement was further amended by the *First Amendment to the Amended and Restated Stockholders Agreement* (the "First Amended Agreement", collectively with the Amended and Restated Stockholders Agreement, the "Stockholder Agreement").  The Stockholder Agreement is annexed hereto as **Exhibit A**.

19.     Section 17 of the Stockholder Agreement concerns *Employment and Post-Employment Restrictions* including, among other terms, clear restrictions on competition (§17(a)), solicitation of employees (§17(b)) and clients (§17(c)), and the disclosure of proprietary information (§17(d)) following the cessation of stockholder's employment by Debtors.

20.     More specifically, Section 17(a) prohibits Worthington and other stockholders who are parties to the Stockholder Agreement from competing with the Debtors, either directly or indirectly, for a period of two (2) years following the cessation of his/their employment. Section 17(a) states:

> Non-Competition.  Each Shareholder agrees that during the period of his or her employment with the Corporation, such Shareholder shall not, unless authorized in writing to do so by the Corporation, directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation, or control of, or be employed by, render services to, or consult with as an officer, employee, consultant, sole proprietor, partner, member, shareholder, owner or otherwise, or be connected to in any manner whatsoever, with any Person that has competed or competes with, or has offered or offers professional and technical services similar to, any line of business in which the Corporation is engaged….Upon the effective date of termination, with or without Cause, of the Shareholder's employment with the Corporation, the Shareholder shall immediately resign from and assign and transfer to the Corporation any position, office or title with any Client, which the Shareholder holds as the Corporation's representative, including, without limitation, any position as the professional consultant or representative of the Corporation to a municipal, county or state entity, board, authority, agency or similar organization.  The Shareholder agrees that he or she shall not serve in or hold such position, office or title for a period of two (2) years following the effective date of termination of his or her employment with the Corporation.

> See Exhibit A, Section 17(a).

21.     Sections 17(b) and (c) prohibit Worthington and other stockholders who are parties to the Stockholder Agreement from soliciting or assisting in the solicitation of any individual employed by the Debtors, or any client serviced by the Debtors, either directly or indirectly, for a period of two (2) years following the cessation of his/their employment.  Those Sections state the following:

> b.  Non-Solicitation of Employees.  Each Shareholder agrees that during the period of his or her employment with the Corporation and for a period of two (2) years commencing as of the effective

5

date of the termination of such Shareholder's employment if such termination results from a resignation or termination initiated by the Shareholder or if such termination results from a Termination for Cause, such Shareholder shall not directly or indirectly (i) solicit, nor assist, participate in or promote the solicitation of, the employment or services of any individual who is employed by the Corporation or provide services on behalf of the Corporation as of the effective date of termination or during the twelve (12) month period prior thereto, or otherwise to leave the Corporation or enter into any agreement to do any of the above, or (ii) solicit, nor assist, participate in or promote the solicitation of any individual who the Shareholder known or has reason to know that the Corporation intends to solicit as an employee or consultant of the Corporation, or (iii) on behalf of himself or herself or any other Person, hire, employ, engage or affiliate with or pay any fees or commissions to, any individual who is employed by the Corporation or provides services on behalf of the Corporation as of the effective date of termination or who was during the twelve (12) month period prior thereto, or enter into any agreement to do any of the above, or (iv) assist, participate in or promote any of the above activities.  Each Shareholder agrees that he or she will not disclose his or her intent to terminate his or her employment with the Corporation to any employee of the Corporation prior to the earliest to occur of either the date on which the Shareholder's employment with the Corporation terminates, with or without Cause, or the date on which the Corporation provides notice to all other employees of the Shareholder's termination of employment, with or without Cause, with the Corporation.

Each Shareholder agrees that, during the two (2) years following his or her effective date of termination of his or her employment with the Corporation if such termination results from a resignation or termination initiated by the shareholder of if such termination results from a Termination for Cause, if an employee of the Corporation or an individual who was an employee of the Corporation or provided services on behalf of the Corporation at the time of, or within the twelve (12) month period prior to, the Shareholder's effective date of termination of employment, contacts the Shareholder about prospective employment or services, the Shareholder will inform such employee or former employee that he or she cannot discuss the matter further.

Further, each Shareholder agrees that during his or her employment with the Corporation of the Corporation, if a former employee of the Corporation, contacts the Shareholder about (i) any business matter involving the Corporation, or (ii) any matter, including, without limitation, prospective employment involving the former employee's current business, the Shareholder will

inform the former employee that he or she cannot discuss the matter further and will immediately notify the Corporation of the contact from the former employee.

c.  Non-Solicitation of Clients.  Each Shareholder agrees that during the period of his or her employment with the Corporation and for a period of two (2) years following his or her effective date of termination of his or her employment with the Corporation if such termination results from a resignation or termination initiated by the Shareholder or if such termination results from a Termination for Cause, the Shareholder shall not directly or indirectly solicit, divert or take away, or assist in or attempt to solicit, divert or take away, the business or patronage of any Client of the Corporation.

Each Shareholder agrees that during his or her employment with the Corporation and the two (2) year period following the effective date of termination of his or her employment with the Corporation if such termination results from a resignation or termination initiated by the Shareholder or if such termination results from a Termination for Cause, if a Client of the Corporation contacts the Shareholder about discontinuing its relationship with the Corporation, or moving its business elsewhere, or about not engaging the Corporation, or about engaging the Shareholder, the Shareholder will inform such Client that he or she cannot discuss the matter further and will immediately notify the Corporation of the contact from the Client.

Each Shareholder agrees that during his or her employment with the Corporation, he or she will not disclose his or her intent to terminate his or her employment with the Corporation to any Client of the Corporation prior to the effective date of termination of his or her employment with the Corporation.  Further, the Shareholder agrees that for a period of two (2) years following the effective date of termination of his or her employment with the corporation if such termination results from a resignation or termination initiated by the Shareholder or if such termination results from a Termination for Cause, the Shareholder will not discuss his or her then current business with any Client of the Corporation.

22.    Pursuant to Sections 17 (d) and (e) of the Stockholder Agreement, Worthington

and other stockholders who are parties to the Stockholder Agreement acknowledged and

understood that all records and documents of Debtors including, without limitation, documents

identifying or concerning the Debtors' "clients" (as defined in Section 1 "Definitions"), are and

remain the sole and exclusive property of the Debtors, and that such documents are to be

returned to Debtors upon the cessation of employment.  Sections 17(d) and (e) specifically state:

> d.      Proprietary Information.  The Shareholders agree that all
> Clients, Clients' records, processional records, and Client lists are
> the sole and exclusive property of the Corporation.  If a person
> ceases to be a Shareholder, the Shareholder shall surrender to the
> Corporation, in good condition, any record or records kept by him
> or her containing the names, addresses and other information with
> respect to Clients or potential clients of the Corporation which
> have been served by the Corporation, except as otherwise required
> by applicable law, statute or regulation, or as otherwise agreed to
> in writing by the Corporation.
>
> e.      Confidentiality.  In the course of his or her employment
> with the Corporation, each Shareholder may have access to
> confidential information of the Corporation, including, without
> limitation, notes, reports, studies, records, data, policies,
> documents, correspondence, files, Client and employee
> information and similar material and information owned by the
> Corporation or used in the course of its business.  All such
> information shall be and shall remain the sole property of the
> Corporation.  Each Shareholder shall not disclose or use such
> information during or after the effective date of termination of his
> or her employment, except as may be required in the course of his
> or her employment by the Corporation, as required by law, or as
> otherwise agreed to in writing by the Corporation.

See Exhibit A, Sections 17(d) and (e).

23.     In Section 17(f), Worthington and the other stockholders who are parties to the

Stockholder Agreement expressly affirmed that the restrictive covenants detailed in Section 17

were both reasonable and necessary to protect the Debtors' legitimate business interests, and that

violation thereof would result in irreparable injury.  Worthington and other stockholders who are

parties to the Stockholder Agreement expressly agreed that, in addition to other appropriate

remedies, Debtors would be entitled to injunctive relief to enforce these restrictive covenant

provisions.

(f)    Acknowledgement. Each Shareholder acknowledges that
the restrictions provided in this Section 17 are reasonable in light
of the Corporation's legitimate business interests, and that these
restrictions do not unduly restrict the Shareholder from earning a
livelihood. Each Shareholder acknowledges that the names of the
Corporation's Clients and employees and the details of their
relationships with the Corporation, as may exist from time to
time, are valuable, special and unique assets of the Corporation
and are deemed to be trade secrets. The Shareholder
acknowledges that the restrictions contained in this Agreement are
reasonable and necessary to protect the legitimate interests of the
Corporation and that a violation of such restrictions could result in
irreparable injury to the Corporation for which money damages
may not be readily ascertainable. Each Shareholder
acknowledges that, in the event of a violation of such restrictions,
the Corporation shall be entitled to preliminary and permanent
injunctive relief without having to prove actual damages or
immediate or irreparable harm or to post a bond; the Corporation
shall be entitled to an equitable accounting of all earnings, profits
and other benefits arising from such violation, which rights shall
be cumulative and in addition to any other rights or remedies to
which the Corporation may be entitled in law and equity.

(Emphasis added).

**Worthington's Conversion of the Debtors' Proprietary Information**

24.    Worthington, suddenly and without prior notice, submitted his resignation to the

Debtors on Friday, April 19, 2013-- "effective immediately." Worthington began his new

employment with T&M on the following Monday, April 22, 2013. Deposition of Mark

Worthington dated June 11, 2013 ("Worthington Dep."), 10:7-25; Worthington Dep. annexed

hereto as **Exhibit B**.

25.    After learning from several of the Debtor's employees that Worthington had been

in contact with them concerning employment opportunities at his new employer, T&M, the

Trustee promptly demanded that Worthington cease and desist from unlawful solicitation of the

Debtors employees and that he honor and discharge the duties he continues to owe to Debtors

under the Stockholder Agreement. Worthington Dep., 141:11 - 142:11.

26.     On April 23, 2013, the Trustee served both Worthington and T&M with notices of Worthington's continuing post-employment restrictive covenants.  Copies of the Trustee's April 23, 2013 letters to Worthington and T&M are annexed hereto as **Exhibits C and D**, respectively.

27.     On June 11, 2013, Worthington submitted to a Rule 2004 examination.

28.     During his deposition, Worthington admitted that, during his employment with the Debtors, he had unrestricted access to information of the Debtors including financial data, client records, completed project files, proposals, the Debtors' "pipeline" of work, bids and potential bidding opportunities.    Worthington Dep., 22:9-23:24.

29.     Worthington also admitted that on the morning of his sudden resignation he downloaded certain files from the Debtors' computer network onto an external flash drive (the "Thumb Drive"), including approximately fifteen (15) types of health and safety training and other plans/manuals; completed and uncompleted project information, approximately twelve (12) bids and proposals and a variety of work product relating to projects of the Debtors. Worthington Dep.; 27:1-28:23.

30.     He admitted that he copied the information onto the Thumb Drive knowing that he was resigning, and that he did so for the purpose of having use of the Debtors' information in the future for his new employer.  Worthington Dep., 28:24-29:23.

31.     Worthington also admitted that he later viewed the contents of the Thumb Drive on his T&M issued laptop computer and, as a result, that information resided on T&M's computer network.  Worthington Dep., 38:6-11.

32.     Worthington admitted that he understood that he took and transferred to the Thumb Drive information that the Debtors regarded as confidential and proprietary, and that he understood the Debtors intended that the information be kept confidential and not be disclosed to

any third parties.   Worthington Dep., 40:8-15.   He admitted, nonetheless, to taking the information for his use and the benefit of his new employer.

33.     Worthington also admitted that he has utilized the Debtors information that he transferred to the Thumb Drive in connection with work performed for the benefit of T&M, the Debtors' competitor.   Among other things, Worthington admitted that he has used that information to assist T&M on bidding certain projects, and that T&M is now performing services for clients and projects that had been serviced by the Debtors while Worthington was still employed by Debtors.  Worthington Dep., 40:16-21.

34.     Based on Worthington's sworn testimony, both during the deposition and again by letter dated June 14, 2013**,** the Trustee demanded that Worthington turn-over the Thumb Drive and account for all of the information belonging to Debtors that was in his possession. Worthington Dep.; 29:1-10; A copy of the Trustees' June 14, 2013 demand is annexed hereto as **Exhibit E**.

35.     At Worthington's deposition, the Trustee's counsel also demanded that the evidence of Worthington's defalcations and conversion of the Debtors' information and intellectual property be safeguarded.  Worthington Dep., 166:23-167:5.

36.     Worthington has not only refused to return the Thumb Drive or to account for his conversion of the Debtors' property, but he has completely ignored the Trustee's supplementary demands for the production of the other evidence relevant to the Defendants' conspiracy to convert Debtors' proprietary information, employees, clients and to otherwise compete unfairly.

**Worthington's Unlawful Solicitation of Debtors' Employees**

37.     Worthington also admitted during his deposition that, approximately two weeks prior to his resignation, he created an electronic mail account with the address of "markworthington.safe@gmail.com" to facilitate a secret dialogue with the employees he

managed in the Debtors' Health and Safety Division. The dialogue, which was purposefully moved from the Debtors' e-mail network to avoid detection by the Debtors of Worthington's and the group's unlawful conduct, included discussion of "shopping" the "Group's" services to competitors of the Debtors, and scheduling and securing interviews for the Group with those competitors. Worthington Dep., 120:22-121:16.

38.     Worthington admitted, and his email reflects, that he undertook to "shop" the Debtors' Health and Safety Division to competitors of the Debtors. Worthington Dep., 72:10-22. He did so notwithstanding his knowledge and understanding that he might have been bound by the restrictive covenants contained in the Stockholder Agreement and, if he was, that he would continue to be bound by those covenants pursuant to their terms. Worthington Dep., 81:21-25, 88:20-24**.**

39.     Among other things, Worthington admitted that he arranged for interviews for himself and members of the Debtors' Health and Safety Division with Debtors' competitors, including Clough Harbor, PERMA and T&M. Worthington Dep., 73:11-20.

40.     In encouraging the members of the Debtors' Health and Safety Division that the Group was in fact marketable, Worthington acknowledged and asserted that the Group's services were "unique" when compared to similar engineering firms in New Jersey and had a value that would be very attractive to the Debtors' competitors. Worthington Dep., 133:1-23. A Copy of Worthington's email to his Group dated April 11, 2013 is annexed hereto as **Exhibit F**.

41.     Worthington admitted that, in shopping the Group to the Debtors' competitors, he interviewed with and subsequently arranged for the Group members to be interviewed and to receive offers from T&M. Worthington Dep.; 58:1-14.

42.     According to Worthington, all of the Debtors' Health and Safety Division employees, with the exception of the two administrative assistants, received formal offers of employment from T&M as a result of his actions.  Worthington Dep., 104:12-108:1.

43.     Worthington testified that he now has a position with T&M that is comparable to the position he had with the Debtors, and that he now manages the same employees for T&M that he brought with him from the Debtors.  Worthington Dep., 53:19-54:4, 58:17-59:1.

44.     Worthington admitted that, prior to his arrival at his new employer, T&M did not have a true "Health and Safety" division, but instead that it had only two hygienists who were involved in health and safety activities.  Worthington Dep., 55:10-19.

45.     Worthington admitted that he understood he was providing substantial assistance to T&M, a known competitor of Debtors, in the establishment of a turnkey Health and Safety division for T&M.  By arranging for the movement of six employees of the Debtors' Health and Safety Division to T&M, Worthington effectively "gutted" that profitable business of Debtors in favor of a direct competitor.  Worthington Dep., 107:5-108:1.

46.     Worthington also admitted that he had no concern for the impact that his actions would have on Debtors. Worthington Dep.; 107:23-108:1.

### Worthington's Solicitation of Debtors' Clients

47.     Worthington testified that he is currently working with clients at T&M who he had recently worked with as clients of the Debtors.  Worthington Dep., 48:21-49:25.

48.     Worthington knew that unlawful taking of the Debtors' proprietary information and a large portion of the Health and Safety Division would result in damages to Debtors' business.  Worthington Dep., 40:8-17.

49.     Worthington orchestrated and provided substantial assistance for the transfer of the Debtors' former clients to T&M by unlawfully trading on his contacts and access to those clients -- contacts that had been established and developed for the benefit of the Debtors.

50.     Upon information and belief, the projects Worthington arranged to transfer to T&M, directly or indirectly, included North Arlington School District; Morris County Health and Safety; Governmental Risk Management Association; Union County Health & Safety; and North Essex Vocational School.  Worthington Dep., 48:21-49:25.

51.     It also appears that Worthington took from Debtors and has used for the benefit of T&M proprietary information belonging to Debtors concerning various projects -- information that Defendants have effectively stolen from Debtors.  Among such information, it is believed that Worthington and T&M have taken, used and/or are now using for T&M's benefit the chemical inventory Debtors prepared on the Union County Educational Services project.

52.     Based upon Worthington's admissions, by letter dated June 14, 2013, the Trustee, pursuant to § 542, demanded, among other things, that T&M account for the conversion of the Debtors' proprietary information for T&M projects.  A copy of the Trustee's letter to T&M dated June 14, 2013 is annexed hereto as **Exhibit G.**  To date, the Trustee's requests have been ignored or refused.

### Partner's Purchase of the Debtors' Assets

53.     Upon learning that the Debtor was seeking to sell its assets, Partner executed a Non-disclosure agreement on April 4, 2013 and began conducting due diligence analyzing the Debtor's assets.

54.     Partner negotiated the terms of sale with the Trustee through counsel. TheTrustee accepted the proposed offer subject to this Court's approval.

55.     The Bankruptcy Court approved the sale of assets pursuant to the terms set forth in the APA.

56.     Pursuant to the terms of the APA, the Trustee pursued former stockholders, including Worthington, and competitors, including T&M, that have harmed the Debtor and will cause harm to Partner.

### T&M's Strategic Delay

57.     On June 14, 2013, the Trustee served Subpoenas for Rule 2004 Examinations and the production of relevant documents to Gary Dahms, T&M's President, and to Ehsan Afumani, Worthington's direct supervisor at T&M and the individual who Worthington claims recruited and hired him.  Worthington Dep., 90:15-91:10.  The Trustee also issued  a Subpoena compelling T&M to produce a corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6) to provide discovery relevant to T&M's tortious interference with the Stockholder Agreement, its conversion of the Debtors' proprietary information and its continuing unlawful competition.  Copies of these Subpoenas are annexed hereto as **Exhibits H and I**, respectively.

58.     On June 14, 2013, the Trustee also made a § 542(a) demand upon T&M to turn-over and to account for any Estate property in its possession or on its network.  *See Exhibit G.*

59.     The Trustee subsequently transmitted an e-mail to T&M making specific reference to Worthington's deposition admission that he copied to the Thumb Drive the Debtors' information and that such information has been used by T&M to promote its business, and that such information resided on T&M's computer network.  A copy of the email dated July 11, 2013, transmitted from the Trustee's counsel to T&M's counsel is annexed here to as **Exhibit J**.

60.     Despite being aware for weeks of the Trustee's investigation and the Subpoenas he issued, T&M waited until <u>after</u> the return date to request additional time to provide responsive information.  After the Trustee extended to T&M the courtesy of an extension, T&M responded by

refusing to turn-over or account for any of the information requested, and it refused to make its agents available for the 2004 examinations.  A copy of T&M's counsel's email dated July 11, 2013 is annexed hereto as **Exhibit K**.

61.    While acknowledging the veracity of Worthington's admissions, T&M complained that the Trustee's requests for information were not sufficiently specific.  Of course, the Trustee's inability to more specifically identify the information contained on the Thumb Drive is the result of Worthington's improper refusal to turn-over the evidence of his unlawful defalcations.

62.    The defendants continue to play a shell and delay game to further their unfair competition.  Upon information and belief, the "raw data" from the Thumb Drive resides and/or at one time resided on the T&M network and has been and continues to be used improperly for the benefit of T&M.  Worthington Dep., 38:6-16.

63.    The Plaintiffs are entitled to expedited turn-over of the Thumb Drive and an expedited and complete accounting of all of the assets converted and unlawfully used by the Defendants to compete unfairly against Debtors.  Defendants, moreover, should immediately be enjoined from disclosing or making any use of Plaintiffs' proprietary information, intellectual property or other assets.

## COUNT ONE

ENFORCEMENT OF THE AUTOMATIC STAY AND
TURN-OVER OF PROPERTY OF THE ESTATE
**11 U.S.C. § 362 AND 542**

64.    The Trustee repeats the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

65.    Since the Petition Date, both Worthington and T&M exercised and continue to exercise control over property of the Debtors' Estates in violation of the automatic stay, 11 U.S.C. § 362(a).

66.    The Trustee, pursuant to § 542, has made specific demands that the Estate property be accounted for and returned.

67.    Defendants have refused to return or account for the Estate property.

68.    Based upon the foregoing, the Trustee demands that a judgment against the Defendants be entered compelling them to turn-over all Estate property including, without limitation, all proprietary information contained on the Thumb Drive, and determining that any such control over Estate property, including the contents, copies, products or offspring of the Thumb Drive, or the Thumb Drive itself, is a violation of the automatic stay, and that any Estate property immediately shall be returned.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment against the Defendants as follows:

(a)    determining that the Defendants' continued possession and control over Estate Property, including the contents, copies, products or derivative products of the Thumb Drive, and the Thumb Drive itself, constitutes a violation of the automatic stay;

(b)    directing the Defendants immediately to turn-over and account for any of the Debtors' proprietary information or other property including, without limitation, any and all intellectual property located on T&M's network or used in any manner in connection with any T&M business or projects;

(c)    compelling the turn-over of the Thumb Drive, including any and all electronic or hard copies;

(d)    awarding compensatory and punitive damages;

(e)    awarding attorneys' fees, costs and sanctions; and

(f)    for such other relief as is just and proper.

## COUNT TWO

**AVOIDANCE AND RECOVERY OF POSTPETITION TRANSFER
11 U.S.C. § 549, 550, AND 551
INITIAL AND SUBSEQUENT TRANSFEREE DEFENDANTS**

69.     The Trustee repeats the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

70.     Worthington's conversion of the Debtors' proprietary information and his subsequent use and transfer of such property to T&M constitute an unlawful post-petition transfer of Estate property.

71.     The conversion of Debtors' proprietary information and intellectual property was not authorized under the Bankruptcy Code or by this Court.

72.     The Trustee has made demands for the return of the property which have been ignored by the Defendants.

73.     Based on the foregoing, the Trustee requests a judgment against the Defendants determining that any such transfer is an unlawful post-petition transfer pursuant to 11 U.S.C. § 549.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a Judgment against the Defendants as follows:

(a)     determining that the Defendants' continued possession and control over Estate property, including the contents, copies, products or derivative products of the Thumb Drive, and the Thumb Drive itself, constitutes a violation of the automatic stay;

(b)     directing the Defendants immediately to turn-over and account for any of the Debtors' proprietary information or other property including, without limitation, any and all intellectual property located on T&M's network or used in any manner in connection with any T&M business or projects;

(c)     compelling the turn-over of the Thumb Drive, including any and all electronic or hard copies;

(d)     awarding compensatory and punitive damages;

(e)     awarding attorneys' fees, costs and sanctions; and

(f)     for such other relief as is just and proper.

**COUNT THREE**

## BREACH OF RESTRICTIVE COVENANTS
## IN STOCKHOLDER AGREEMENT

74.      The Trustee repeats the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

75.      Section 17(a) of the Stockholder Agreement prohibits Worthington from competing with the Debtors, either directly or indirectly, for a period of two years, following the cessation of his employment with Debtors.

76.      Worthington's continued employment with T&M violates Section 17(a) of the Stockholder Agreement.

77.      Sections 17(b) and (c) of the Stockholder Agreement prohibit Worthington from soliciting or assisting in the solicitation of any individual employed by the Debtors, or servicing any client serviced by the Debtors, either directly or indirectly, for a period of two years following his employment by the Debtors.

78.      In violation of his contractual duties and the duty of loyalty he owed to his former employer, Worthington unlawfully arranged for the Debtors' Health and Safety Division to interview at various competitors, including T&M.

79.      Worthington not only arranged for and facilitated the  pilfering and defection from the Debtors' Health and Safety Division for the benefit of his new employer, but he arranged for his new employer to work on projects for clients he previously worked on while employed by the Debtors.

80.      Worthington also breached the Stockholder Agreement by converting the Debtors' proprietary information for the benefit of his new employer, T&M.

81.      Worthington caused and continues to cause actual, immediate and irreparable harm to the Debtors, for which there is no adequate remedy at law.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment against the Defendants as follows:

(a) enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b) enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c) enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years form the date of the issuance of a final Judgment, from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d) enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e) directing Worthington and T&M to immediately turn-over to Debtors any and all of their property;

(f) compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g) compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h) awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i) awarding punitive damages;

(j) awarding pre- and post judgment interest to Debtors;

(k) reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)      such other and further relief as the Court deems appropriate.

## COUNT FOUR

### BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

82.      The Trustee repeats the allegations of the foregoing paragraphs of this Complaint as though fully set forth herein.

83.      Prior to his sudden resignation on April 19, 2013, Worthington, at all material times, was a shareholder of Debtors who, by virtue of his position of trust and confidence with the Debtors', and his access to confidential and proprietary information relating to the Debtors' business, owed a fiduciary duty to the Debtors.

84.      At all times during his employment by Debtors, Worthington owed his employers a duty of loyalty.

85.      Worthington breached the fiduciary duty and duty of loyalty he owed to Debtors by failing to act in their best interests and by acting in his own self-interest. Worthington acted intentionally, willfully, maliciously and with reckless indifference to the substantial and irreparable harm that would cause to Debtors by stealing their proprietary information, gutting their Health and Safety Division, poaching clients and undertaking to compete unfairly with Debtors.

86.      Worthington breached the fiduciary duty and duty of loyalty owed to Debtor by facilitating and aiding the transfer of the Debtors' proprietary information and shopping and arranging for and the relocation of the Debtors' Health and Safety Division to T&M.

87.      Worthington caused and continues to cause actual, immediate and irreparable harm to the Debtors and Partner, for which there is no adequate remedy at law.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment against the Defendants as follows:

(a)     enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)     enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)     enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)     enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)     directing Worthington and T&M to immediately turn-over to Debtors any and all of their property;

(f)     compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)     compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)     awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)     awarding punitive damages;

(j)     awarding pre- and post judgment interest to Debtors;

(k)     reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)     such other and further relief as the Court deems appropriate.

## <u>COUNT FIVE</u>

### CONVERSION

88.    Plaintiffs repeat the allegations of the foregoing paragraphs of the Complaint as though fully set forth herein.

89.    Worthington unlawfully transferred tangible assets belonging to the Debtors and purchased by Partner, including proprietary information and intellectual property to T&M.

90.    Worthington willfully and maliciously acted to deprive the Debtors' Estates' and Partner of their right to the tangible assets, thereby facilitating his new employer's ability to compete unfairly against Debtors and Partner.

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter a judgment against the Defendants as follows:

(a)    enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)    enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)    enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)    enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)    directing Worthington and T&M to immediately return to Debtors any and all of their property;

(f)     compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)     compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)     awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)     awarding punitive damages;

(j)     awarding pre- and post judgment interest to Debtors;

(k)     reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)     such other and further relief as the Court deems appropriate.

## COUNT SIX

### UNJUST ENRICHMENT

91.     Plaintiffs repeat the allegations of the foregoing paragraphs of the Complaint as though fully set forth herein.

92.     Worthington converted valuable assets belonging to Debtors, and purchased by Partner to T&M without authorization from Debtors and without obtaining consideration for Debtors' or Partner's benefit for such assets.

93.     The Defendants are benefitting unjustly by the unauthorized and uncompensated transfer of assets.

94.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and continue to be damaged.

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter a judgment against the Defendants as follows:

(a)     enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)     enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)     enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)     enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)     directing Worthington and T&M to immediately return to Debtors any and all of their property;

(f)     compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)     compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)     awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)     awarding punitive damages;

(j)     awarding pre- and post judgment interest to Debtors;

(k)     reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)       such other and further relief as the Court deems appropriate.

## COUNT SEVEN

## TORTIOUS INTERFERENCE WITH CONTRACT

95.     The Trustee repeats the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

96.     Worthington's employment by T&M violates the Stockholder's Agreement, which prohibits him from competing with Debtors for two (2) years after his separation from employment by soliciting, canvassing, or accepting any business or transaction for any other person, firm or corporation or business similar to or in competition with any business of the Company.

97.     Worthington has already been in contact with the Debtors' clients in order to solicit and to perform work for those clients for the benefit of his new employer, T&M, in direct violation of his continuing contractual obligations.

98.     Worthington, to facilitate his work for his new employer, converted the Debtors' proprietary information and disclosed it to T&M to compete unfairly against Debtors.

99.     The Stockholder Agreement prohibits Worthington from disclosing any of Debtors' confidential and proprietary information, including but not limited to, trade secret, business information, customer information or other business information, and from acting in any manner contrary to the Debtors' best interest.

100.    T&M, through its officers, directors, owners and/or agents, knew, should have known and/or had reason to know that Worthington had restrictive covenants, the terms of which precluded him from being employed by T&M within two (2) years of the date of separation from

26

employment and from soliciting Debtors' customers to curtail or terminate their business with

Debtors.

101.    T&M, through its officers, directors, owners and/or agents, knowingly and

intentionally interfered with the restrictive covenants between Debtors and Worthington by

offering Worthington employment and by continuing to employ him even after receiving direct

notice that his employment breached his agreement with Debtors.

102.    T&M's actions were knowing, intentional, in willful disregard of Debtors' rights,

with malice aforethought, and without justification or privilege.

103.    By engaging in such conduct, T&M has caused and continues to cause actual

immediate and irreparable harm to Debtors, including but not limited to the loss of the benefit of

its contracts, intangible harm, the loss of the services of a valuable employee, the loss of good

will and irreparable harm.  Debtors have no adequate remedy at law, and T&M made it clear that

it will continue its wrongful conduct unless enjoined.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment

against the Defendants as follows:

(a)    enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)    enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)    enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance final Judgment , from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)     enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)     directing Worthington and T&M to immediately turn-over to Debtors any and all of their property;

(f)     compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)     compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)     awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)     awarding punitive damages;

(j)     awarding pre- and post judgment interest to Debtors;

(k)     reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)     such other and further relief as the Court deems appropriate.

## COUNT EIGHT

### TORTIOUS INTERFERENCE WITH BUSINESS OPPORTUNITIES

104.    Plaintiffs repeat the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

105.    Worthington's employment by T&M violates his restrictive covenants, which prohibit him from competing with Debtors for two (2) years after his separation from employment by soliciting, canvassing or accepting any business or transaction for any other person, firm or corporation or business similar to or in competition with any business of the Debtors.

106.    Worthington has already been in contact with the Debtors' clients to solicit and to perform work for T&M, in direct violation of his continuing contractual obligation.

107.    Worthington, to facilitate his work for his new employer, converted the Debtors' proprietary information and disclosed it to T&M to compete unfairly against Debtors.

108.    The Stockholder Agreement prohibits Worthington from disclosing any of Debtors' confidential and proprietary information, including but not limited to, trade secret, business information, customer information or other business information, and from acting in any manner contrary to the Debtors' best interest.

109.    T&M, through its officers, directors, owners and/or agents, knew, should have known and/or had reason to know that Worthington had restrictive covenants, the terms of which precluded him from being employed by T&M within two (2) years of the date of separation from employment and from soliciting Debtors' customers to curtail or terminate their business with Debtors.

110.    T&M, through its officers, directors, owners and/or agents, knowingly and intentionally interfered with the restrictive covenants between Debtors and Worthington by offering Worthington employment and by continuing to employ him even after receiving direct notice that his employment breached his agreement with Debtors.

111.    T&M's actions were knowing, intentional, in willful disregard of Debtors' rights, with malice aforethought, and without justification or privilege.

112.    By virtue of the foregoing, Defendants have tortuously interfered with Plaintiffs' prospective economic advantage.

113.    By engaging in such conduct, T&M has caused and continues to cause actual immediate and irreparable harm to Debtors, including but not limited to the loss of the benefit of its contracts, intangible harm, the loss of the services of a valuable employee, the loss of good

will and irreparable harm.  Debtors have no adequate remedy at law, and T&M made it clear that

it will continue its wrongful conduct unless enjoined.

     **WHEREFORE**, the Plaintiffs respectfully request that this Court enter a judgment

against the Defendants as follows:

(a)      enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)      enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)      enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a  final Judgment , from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)      enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)      directing Worthington and T&M to immediately turn-over to Debtors any and all of their property;

(f)      compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)      compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)      awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)      awarding punitive damages;

(j)    awarding pre- and post judgment interest to Debtors;

(k)    reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)    such other and further relief as the Court deems appropriate.

## COUNT EIGHT

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

114.    Plaintiffs repeat the allegations of the foregoing paragraphs of the Complaint as though fully set forth herein.

115.    Worthington executed the Stockholder Agreement, which contained certain restrictive covenants as set forth herein, but never intended for Debtors to receive the benefit thereof.

116.    As a direct and proximate cause of Worthington's breach of the implied covenant of good faith and fair dealing, the Plaintiffs have been and continue to be injured in their business and property.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment against the Defendants as follows:

(a)    enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)    enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)    enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)    enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)    directing Worthington and T&M to immediately turn-over to Debtors any and all of their property;

(f)    compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)    compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)    awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)    awarding punitive damages;

(j)    awarding pre- and post judgment interest to Debtors;

(k)    reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)    such other and further relief as the Court deems appropriate.

## COUNT NINE

## UNFAIR COMPETITION

117.    Plaintiffs repeat the allegations of the foregoing paragraphs of the Complaint as though fully set forth herein.

118.    The foregoing acts constitute unfair competition by Worthington and T&M pursuant to the defendants willful and malicious plan to unlawfully capture the Debtors' and Partner's trade for the benefit of Worthington and T&M.

119.    As a direct and proximate result of Defendants' aforesaid unfair competition, Plaintiffs have been and continue to be irreparably damaged.

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter a judgment against the Defendants as follows:

(a)    enjoining Worthington, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from working for, remaining employed by, or otherwise soliciting, canvassing or accepting any business or transaction for T&M, or any person, firm, corporation or business similar to or in competition with any business of Debtors;

(b)    enjoining T&M, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a final Judgment, from permitting Worthington to work for T&M, remain employed by T&M, or otherwise solicit, canvass or accept any business or transaction from T&M;

(c)    enjoining Worthington temporarily, preliminarily during the pendency of this action and for two (2) years from the date of the issuance of a  final Judgment, from contacting or communicating in any way with any of plaintiffs customers with the purpose or intent of requesting that such customer curtail or cancel its business with Plaintiffs;

(d)    enjoining Worthington and T&M temporarily, preliminarily, during the pendency of this action and permanently from using any proprietary information unlawfully taken from the Debtors by Worthington.

(e)    directing Worthington and T&M to immediately turn-over to Debtors any and all of their property;

(f)    compelling Defendants to render Plaintiffs a complete accounting for all monies received and disbursed by them since the date Worthington began employment for T&M;

(g)    compelling Defendants to immediately turn-over to Plaintiffs' counsel all computers, netbooks, Personal Data Assistants (PDAs), Blackberrys, cell phones, media drives (portable or otherwise), hard drives, flash/usb drives, and any other electronic devices on which information, communication or documents may be found, regarding or relating to Debtors or on which any customer contact or other confidential or proprietary information has ever been stored, for forensic imaging by a third-party forensic computing vendor;

(h)    awarding monetary damages to compensate for all those tangible and intangible losses incurred as a result of their unlawful conduct;

(i)    awarding punitive damages;

(j)     awarding pre- and post judgment interest to Debtors;

(k)     reimbursing Plaintiffs for their attorneys' fees and costs; and

(l)     such other and further relief as the Court deems appropriate.


**WASSERMAN, JURISTA & STOLZ, P.C.**
Counsel to Edwin H. Stier, Esq.,
Chapter 11 Trustee


*/s/Donald W. Clarke*
By:_____
**DONALD W. CLARKE**

Dated:  July 26, 2013


**GIORDANO, HALLERAN & CIESLA, P.C.**
Counsel to Partner Assessment Corporation,


*/s/Donald F. Campbell, Jr.*
By:_____
**DONALD F. CAMPBELL, JR.**

Dated:  July 26, 2013

**<u>VERIFICATION</u>**

I, EDWIN H. STIER, hereby certify and verify under penalty of perjury that:

1.      I am the Chapter 11 Trustee for the above-referenced jointly administered estates of Birdsall Services Group, Inc. ("Birdsall") and BSG Engineering, Surveying and Landscaping Architecture, LLC ("BSG", collectively with Birdsall, the "Debtors");

2.      I have read the factual allegations contained in the Verified Complaint and affirm such allegations are true and accurate to the best of my knowledge, information and belief, the source of my knowledge and basis of my belief being my review of the exhibits annexed hereto including, without limitation, the deposition testimony of Mark Worthington; and

3.      I am aware that if any of the allegations contained in the foregoing Verified Complaint are willfully false, that I am subject to punishment.

*/s/ EDWIN H. STIER*
EDWIN H. STIER


**<u>VERIFICATION</u>**

I, JOSEPH DERHAKE, hereby certify and verify under penalty of perjury that:

1.      I am President of Partner Assessment Corporation ("Partner");

2.      I have read the factual allegations contained in the Verified Complaint and affirm specific information and allegations solely related to Partner contained in this Verified Complaint are true and accurate to the best of my knowledge, information and belief; and

3.      I am aware that if any of the allegations contained in the foregoing Verified Complaint are willfully false, that I am subject to punishment.

*/s/ JOSEPH DERHAKE*
JOSEPH DERHAKE